FILED

2024 Jul-23  PM 02:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT M. GARDINER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:21-cv-01397-MHH** |
| | } | |
| **ROUNDPOINT MORTGAGE** | } | |
| **SERVICING CORPORATION,** | } | |
| ***et al.,*** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

In this case, Robert Gardiner asserts federal and state law claims against defendants RoundPoint Mortgage Servicing Corporation and Federal National Mortgage Association.  (Doc. 33).[1]  Mr. Gardiner alleges that the defendants falsely reported that he defaulted on a mortgage loan and wrongfully foreclosed on his property.  Pursuant to Federal Rule of Civil Procedure 12(b)(b), the defendants have moved to dismiss Mr. Gardiner's claims.  (Doc. 38).  This opinion and order resolves the motion to dismiss.

---

[1] In his amended complaint, Mr. Gardiner also names Mortgage Electronic Registration Systems, Inc. as a defendant.  (Doc. 33).  Mr. Gardiner has indicated that he no longer wishes to pursue his claims against MERS and that he does not oppose MERS's motion to dismiss.  (Doc. 44, p. 1, n.1).  The Court has dismissed Mr. Gardiner's claims against MERS with prejudice.  (Doc. 49, p. 2).

This opinion begins with the standard of review applicable to motions to dismiss under Rule 12(b)(6). Then, the Court summarizes the allegations in Mr. Gardiner's amended complaint, presenting the alleged facts in the light most favorable to Mr. Gardiner. Finally, the Court evaluates Mr. Gardiner's allegations under the legal standards that govern his federal and state law claims.

## I.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must consider Rule 12(b)(6) in conjunction with Rule 8. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Generally, to meet the requirements of Rule 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, "a complaint 'does not need detailed factual allegations,' but the allegations 'must be enough to raise a right to relief above the speculative level.'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in

Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of the truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). A district court accepts as true the well-pled factual allegations in the complaint and construes the factual allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

In deciding a motion to dismiss, a district court must consider the factual allegations in the complaint, and a district court may consider documents attached to the complaint. *Turner v. Williams*, 65 F.4th 564, 584 n.27 (11th Cir. 2023) (first citing *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695–96 (11th Cir. 2014), and then citing Fed. R. Civ. P. 10(c)). In resolving a motion to dismiss, a district court may consider documents attached to a complaint "if the attached material [is] '(1) central to the plaintiff's claim' and (2) 'the authenticity of the document is not

challenged.'" *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  When a court may consider the documents attached to a complaint, and those documents "contradict the general and conclusory allegations of the pleading, the exhibits govern." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1232 (11th Cir. 2022) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)).

## II.

Mr. Gardiner alleges that he brought property located at 3168 Mulga Loop Road, Birmingham, Alabama, financed the purchase through Worthington Federal Bank, and on December 22, 2010, executed a mortgage with MERS, "acting solely as nominee for the lender, Worthington Federal Bank." (Doc. 33, p. 3, ¶ 5).  As relevant here, paragraph 2 of the mortgage provides that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3." (Doc. 33, p. 37, ¶ 2).  Paragraph 3 provides that the borrower shall pay the lender "Escrow Items," which include "taxes and assessments . . . leasehold payments or ground rents . . . premiums for any and all insurance required by Lender under Section 5 . . . [and] Mortgage Insurance premiums . . . ."  (Doc. 33, p. 37, ¶ 3).

In the event the promissory note and mortgage are sold, paragraph 20 of the mortgage provides:

> The Note or a partial interest in the Note (together with this Security
> Interest) can be sold one or more times without prior notice to
> Borrower.  A sale might result in a change in the entity (known as the
> "Loan Servicer") that collects Periodic Payments due under the Note
> and this Security Instrument and performs other mortgage loan
> servicing obligations . . . . If there is a change of the Loan Servicer,
> Borrower will be given written notice of the change which will state the
> name and address of the new Loan Servicer, the address to which
> payments should be made and any other information RESPA requires
> in connection with a notice of transfer of servicing.

(Doc. 33, p. 42, ¶ 20).[2]

In the event of default, acceleration of the note, and foreclosure, paragraph 22

of the mortgage provides:

> Lender shall give notice to Borrower prior to acceleration following
> Borrower's breach of any covenant or agreement in this Security
> Instrument (but not prior to acceleration under Section 18 unless
> Applicable Law provides otherwise).  The notice shall specify: (a) the
> default; (b) the action required to cure the default; (c) a date, not less
> than 30 days from the date the notice is given to Borrower, by which
> the default must be cured; and (d) that failure to cure the default on or
> before the date specified in the notice may result in acceleration of the
> sums secured by this Security Instrument and sale of the Property.  The
> notice shall further inform the Borrower of the right to reinstate after
> acceleration and the right to bring a court action to assert the non-
> existence of a default or any other defense of Borrower to acceleration
> and sale.  If the default is not cured on or before the date specified in
> the notice, Lender at its option may require immediate payment in full
> of all sums secured by this Security Instrument without further demand
> and may invoke the power of sale and any other remedies permitted by
> Applicable Law.   Lender shall be entitled to collect all expenses

---

[2] In the amended complaint, Mr. Gardiner alleges that the mortgage "requires that Gardiner be
given notice of any sale, assignment, transfer or change of servicer of his mortgage."  (Doc. 33,
p. 5, ¶ 10).  Mr. Gardiner does not identify a specific provision of the mortgage to support this
allegation.  Paragraph 20 contradicts Mr. Gardiner's allegation to the extent he asserts that the
mortgage requires notice of any sale, assignment, or transfer.  Accordingly, the contents of the
mortgage govern.  *Chabad*, 48 F.4th at 1232.

incurred in pursuing the remedies provided in Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Jefferson County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person legally entitled to it.

(Doc. 33, p. 43, ¶ 22). Paragraph 15 provides that all notices given to the borrower by the lender shall be sent in writing and "shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means . . . ." (Doc. 33, p. 41, ¶ 15).

Mr. Gardiner alleges that, at some point after he executed the promissory note and mortgage, the note and mortgage were "sold and transferred to [Fannie Mae] and thereafter to RoundPoint." (Doc. 33, p. 5, ¶ 10). Mr. Gardiner alleges that he "never received any official notification of any transfer from Worthington Federal Bank to anyone else and . . . no notice of any involvement of RoundPoint other than that it was the servicer of his loan." (Doc. 33, p. 5, ¶ 10). Mr. Gardiner alleges that he was not behind on his payments. (Doc. 33, p. 7, ¶ 18).

On October 25, 2017, RoundPoint sent Mr. Gardiner by first-class mail a letter titled "NOTICE OF DEFAULT AND INTENT TO ACCELERATE." (Doc. 39-2, pp. 2–3).[3]  The October 2017 letter states that RoundPoint was the servicer of Mr. Gardiner's mortgage, that the mortgage was in default, and that Mr. Gardiner must pay $3,413.68 by December 1, 2017, to cure the default. (Doc. 39-2, p. 3).

On January 18, 2018, Sirote & Permutt, the law firm representing RoundPoint, sent a letter to Mr. Gardiner titled "NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE." (Doc. 33, p. 59).  The January 2018 letter stated that RoundPoint was the creditor, that the promissory note and mortgage were in default, and that RoundPoint "accelerate[d] to maturity the entire remaining unpaid balance of the debt, including attorney's fees, accrued interest, and other

---

[3] The October 2017 letter is not attached to the amended complaint, but the letter is attached to RoundPoint's and Fannie Mae's motion to dismiss. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The October 2017 letter is central to Mr. Gardiner's claims as his breach of contract claims, FDCPA claims, and claim for failure of conditions precedent of the contract are either partially or wholly premised on the defendants' alleged failure to send a proper default letter in compliance with paragraphs 15 and 22 of the mortgage. (*See* Doc. 33, p. 13, ¶ 37, pp. 15–16, ¶ 49 (alleging that the defendants "failed to send a proper notice of default"); Doc. 33, p. 24, ¶ 92, p. 26, ¶ 101 (alleging that RoundPoint violated the FDCPA because "the default notices contained the incorrect amount owed on the loan and included incorrect amount of past due payments as well as incorrect amounts needed to bring the loan current"); Doc. 33, p. 29, ¶ 118 (alleging that RoundPoint breached the mortgage by "fail[ing] to send a proper default letter to the borrower's and/or the successor in interest, pursuant to paragraph 15 and in compliance with paragraph 22 of the mortgage contract.")). Mr. Gardiner does not contest the authenticity of the October 2017 letter. (Doc. 44, p. 2 n.2). Accordingly, the Court may consider the October 2017 letter without converting the motion to dismiss to a motion for summary judgment.

lawful charges." (Doc. 33, p. 59).[4]  The January 2018 letter informed Mr. Gardiner that a foreclosure sale was scheduled for February 26, 2018.  (Doc. 33, p. 59). Enclosed with the January 2018 letter was a copy of the foreclosure notice that was published in The Alabama Messenger in January and February 2018.  (Doc. 33, pp. 61–62; *see also* Doc. 33, p. 7, ¶ 17).  The foreclosure notice stated that Mr. Gardiner was in default, that RoundPoint was the mortgagee/transferee, and included the time and place of the foreclosure sale.  (Doc. 33, pp. 61–62).

On August 28, 2018, Sirote & Permutt sent another letter to Mr. Gardiner titled "NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE." (Doc. 33, p. 63).  The August 2018 letter stated that RoundPoint was the loan servicer and creditor, that the promissory note and mortgage were in default, that RoundPoint was accelerating the entire remaining unpaid debt, and that a foreclosure sale was scheduled for October 2, 2018.  (Doc. 33, p. 63).  Enclosed with the August 2018 letter was a copy of the foreclosure notice that was published in The Alabama Messenger in August and September 2018.  (Doc. 33, pp. 65–66; *see also* Doc. 33, p. 7, ¶ 17).  This foreclosure notice appears to be identical to the first foreclosure notice, with the exception of the date of the foreclosure sale.  (Doc. 33, pp. 65–66).

---

[4] Mr. Gardiner's allegations regarding the January 18, 2018 letter are consistent with the contents of the January 18 letter.  (Doc. 33, p. 7, ¶ 15).  The amended complaint incorporates the January 18 letter by reference.  (Doc. 33, p. 7, ¶ 15).

Mr. Gardiner alleges that he was not in default and that Fannie Mae and RoundPoint began foreclosure proceedings "despite knowing that [he] claimed that he was not in default." (Doc. 33, p. 7, ¶¶ 16, 18). According to Mr. Gardiner, RoundPoint "improperly serviced [his] loan by failing to apply payments correctly, misapplying payments, holding payments improperly in suspense accounts, and failing to proper[ly] credit payments, by mishandling the escrow account, charging fees and expenses which [were] not proper or authorized, by failing to accept payments or improperly rejecting them, and by failing to send proper monthly statements to him." (Doc. 33, p. 9, ¶ 20). Mr. Gardiner alleges that between August 2016 and October 2018, RoundPoint charged him more than $1085.00 in fees, including late fees, foreclosure fees, attorney fees, "fees for drive by inspection as well as 'other fees' which were not specifically named by RoundPoint." (Doc. 33, p. 9, ¶ 21). Mr. Gardiner also alleges that he "attempted to make payments to RoundPoint before the foreclosure sale" and that "RoundPoint refused to accept the payments." (Doc. 33, p. 9, ¶ 20). Mr. Gardiner alleges that RoundPoint either ignored or denied his applications for loss mitigation and for loan modification. (Doc. 33, p. 8, ¶ 19).

On October 2, 2018, RoundPoint sold the property to Fannie Mae at a foreclosure sale. (Doc. 33, p. 11, ¶ 27). RoundPoint executed a foreclosure deed transferring the property to Fannie Mae, and the deed that was then recorded.

(Doc. 33, pp. 48–52).   On December 31, 2018, Fannie Mae sold the property to Michelle Jacobs-Porter and Carlos Porter.  (Doc. 33, pp. 54–56).

In January of 2019, the Porters brought an ejectment action against Mr. Gardiner in the Circuit Court of Jefferson County, Alabama.  (Doc. 1-3, pp. 2–4).  Mr. Gardiner answered and asserted counterclaims against the Porters and three new parties:  RoundPoint, Fannie Mae, and MERS.  (Doc. 1-3, pp. 17–33).  Mr. Gardiner asserted nine claims against RoundPoint: unjust enrichment, (Doc. 1-3, p. 22); wrongful foreclosure, (Doc. 1-3, pp. 22–24); slander of title, (Doc. 1-3, p. 24); breach of contract, (Doc. 1-3, pp. 24–26); placed in a false light, (Doc. 1-3, pp. 26–27); defamation, libel, and slander, (Doc. 1-3, pp. 27–28); violations of the Fair Debt Collection Practices Act, (Doc. 1-3, pp. 28–30); violations of the Fair Credit Reporting Act, (Doc. 1-3, pp. 30–32); and a claim for declaratory relief, (Doc. 1-3, p. 32).  Mr. Gardiner asserted two claims against Fannie Mae:  a claim for slander of title, (Doc. 1-3, p. 24); and a claim for declaratory relief, (Doc. 1-3, p. 32).

RoundPoint, Fannie Mae, and MERS first removed the state court action to this Court on April 24, 2019.  (Doc. 1-3, pp. 44–58; *see also Jacobs-Porter et al v. Gardiner*, 2:19-cv-00622-MHH).  The Court remanded the action to state court.  The Court held that defendants added to an ejectment action by a defendant through a "counterclaim" may not remove to federal court.  (Doc. 1-4, pp. 46–47).  After the case returned to the Circuit Court of Jefferson County, Alabama, the state court

severed Mr. Gardiner's counterclaims against RoundPoint, Fannie Mae, and MERS, created a new action, and realigned the parties. (Doc. 1-5, p. 46).

RoundPoint, Fannie Mae, and MERS then removed the new state court action—the current action—to this Court. (Doc. 1). The Court denied Mr. Gardiner's motion to remand. (Doc. 21). After RoundPoint, Fannie Mae, and MERS moved for judgment on the pleadings, (Doc. 22), Mr. Gardiner asked for permission to file an amended complaint to satisfy federal pleading standards, (Doc. 26, p. 2). The Court granted Mr. Gardiner's request and asked Mr. Gairdner "to be cognizant" of the defendants' arguments for judgment on the pleadings. The Court stated that it would "dismiss *sua sponte* frivolous claims in the amended pleading." (Doc. 31).

In his amended complaint, Mr. Gardiner asserts these claims against RoundPoint and Fannie Mae: breach of contract, (Doc. 33, pp. 12–16), slander of title, (Doc. 33, pp. 18–19), and unjust enrichment, (Doc. 33, pp. 19–20). Mr. Gardiner asserts these claims against RoundPoint: wrongful foreclosure, (Doc. 33, pp. 16–18), defamation, libel, and slander, (Doc. 33, pp. 20–22), violations of Truth in Lending, (Doc. 33, pp. 22–23), violations of the Fair Debt Collection Practices Act, (Doc. 33, pp. 23–28), failure of conditions precedent of the contract, (Doc. 33, pp. 28–30), and breach of fiduciary duty and good faith and fairness, (Doc. 33, pp. 30–31), and a claim for declaratory relief, (Doc. 33, pp. 31–32).

## III.

As a threshold matter, RoundPoint and Fannie Mae contend the Court should dismiss Mr. Gardiner's claims entirely because before he filed his claims, Mr. Gardiner did not comply with paragraph 20 of the mortgage.  (Doc. 39, p. 5). Paragraph 20 provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Agreement or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Agreement, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Doc. 33, p. 42, ¶ 20).  The defendants rely on *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, (S.D. Fla. Mar. 30, 2018), to argue that a plaintiff's claims against a mortgagee or mortgage servicer are barred when a plaintiff does not provide a notice of grievance as required by the mortgage. (Doc. 39, p. 5).

Mr. Gardiner argues that he did not have to provide pre-suit notice because post-foreclosure notice would be futile in that the defendants could not cure alleged breaches of the mortgage post-foreclosure.  (Doc. 44, pp. 24–25) (citing *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552 n.6 (S.D.N.Y. 2014); *Mathis v. Nationstar Mortgage., Ltd.*, 2012 WL 6162233, at *3 (S.D. Ala. Dec. 11, 2012); and

*Barnes v. U.S. Bank Nat'l Ass'n as trustee for NRZ Pass-Through Tr. V*, 318 So. 3d 1209, 1217 n.6 (Ala. Civ. App. 2020)).

The defendants argue in reply that Mr. Gardiner's futility argument is "unavailing because unlike the plaintiff in *Mathis v. Nationstar Mortgage, LTD*, [Mr. Gardiner] . . . was well aware of his potential claims prior to the foreclosure and thus had the opportunity to give a pre-suit notice of grievance in advance of filing suit and in advance of the foreclosure and extinguishment of the mortgage contract." (Doc. 48, pp. 3–4). The Court is not persuaded by this argument because there is no indication from the facts of *Mathis* that the plaintiff was unaware of his potential claims before foreclosure, and the district court did not enter judgment on the pleadings based on the plaintiff's failure to provide pre-suit notice. *See* 2012 WL 6162233, at *4. Additionally, a plaintiff does not have to bring all possible claims before foreclosure; a plaintiff may assert a direct attack on a foreclosure through "an action to set aside the sale after it has occurred." *Barnes*, 318 So. 3d at 1214 (quoting *Campbell v. Bank of Am., N.A.*, 141 So. 3d 492, 494 (Ala. Civ. App. 2012)). Accordingly, the Court declines to dismiss Mr. Gardiner's claims for this reason.

In support of his breach of contract claims, Mr. Gardiner alleges that RoundPoint and Fannie Mae breached terms in the promissory note and mortgage "by failing to comply with essential terms in paragraph 2 regarding the application

of payment and the notice requirements of paragraph 22 of the agreement."
(Doc. 33, p. 12, ¶ 32, p. 15, ¶ 44). Mr. Gardiner asserts that RoundPoint "never
applied some payments that it cashed to his account" and "refused to accept
payments that he attempted to make or returned payments that he sent." (Doc. 33,
p. 12, ¶ 32, p. 15, ¶ 44). Mr. Gardiner also alleges that RoundPoint charged improper
fees from April 2016 to October 2018. (Doc. 33, p. 9, ¶ 21, p. 12, ¶ 32, p. 15, ¶ 44).
Finally, Mr. Gardiner alleges that RoundPoint did not send a proper notice of default,
notice of intent to accelerate, or notice of acceleration as required by paragraph 22
of the mortgage. (Doc. 33, p. 13, ¶ 37, pp. 15–16, ¶ 49, p. 28, ¶ 111).

RoundPoint and Fannie Mae argue that the Court should dismiss
Mr. Gardiner's breach of contract claims and claim for failure of conditions
precedent to the extent these claims are premised upon RoundPoint's alleged failure
to send proper notices under paragraph 22 of the mortgage.[5] The defendants argue
that Mr. Gardiner does not allege what was improper about the notices RoundPoint
sent, and that the October 2017 notice of default "strictly complies with paragraph 22
and, in pertinent part, mirrors it verbatim." (Doc. 39, p. 8).

Mr. Gardiner does not address the defendants' arguments as to the sufficiency
of notices. By failing to respond to the defendants' arguments with respect to his

---

[5] Round Point and Fannie Mae do not move to dismiss the breach of contract claims to the extent
those claims are premised on the application of payments under paragraph 2 of the mortgage.
(Doc. 39, p. 6).

breach of contract claims and claim for failure of conditions precedent, Mr. Gardiner effectively has abandoned these claims. *Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. . . . when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (alterations adopted and citations omitted).

Abandonment aside, Mr. Gardiner has not specifically alleged how the October 2017 notice of default and January 2018 and August 2018 notices of acceleration did not comply with paragraph 20 of the mortgage. To the extent Mr. Gardiner alleges that he did not receive these notices, the Court is not persuaded. The January 2018 and August 2018 notices of acceleration are attached to his complaint. (Doc. 33, pp. 59–66). In his response brief, Mr. Gardiner does not dispute the authenticity of the October 2017 notice of default that appears in the record at Doc. 39-2. The Court will dismiss Mr. Gardiner's claim for failure of conditions precedent and his breach of contract claims to the extent those claims are premised on notices required under the mortgage. Mr. Gardiner's breach of contract claims will proceed to the extent they rest on the alleged mishandling of payments and alleged improper fees charged from April 2016 to October 2018.

With respect to Mr. Gardiner's wrongful foreclosure claim against RoundPoint, Alabama law states that a claim for "wrongful foreclosure" arises where

"a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (quoting *Reeves Cedarhurst Development Corp. v. First American Federal Savings and Loan Assoc.*, 607 So. 2d 180, 182 (Ala.1992)). Mr. Gardiner alleges:

> The power of sale was exercised for a purpose other than to secure the debt owed by plaintiff, as the plaintiff was current on the debt at the time of the default and acceleration or the default was caused by the Defendant, RoundPoint.  Moreover, the Defendant had no right or authority to foreclose pursuant to the mortgage contract and Alabama Code Section 35-10-12 as it had no valid assignment of the Note and Mortgage, was not a holder of a properly indorsed Note, and was not entitled to the proceeds of the loan indebtedness at the time of the foreclosure sale.

 (Doc. 33, p. 18, ¶ 57).

Mr. Gardiner has not alleged facts to support his conclusory allegation as to the validity of the assignment of the note and mortgage to RoundPoint.  It appears from the amended complaint that Mr. Gardiner contests the validity of the assignment because he did not receive notice of the assignment.  (Doc. 33, pp. 5–6, ¶¶ 10–11).  Mr. Gardiner alleges that the mortgage "requires that [he] be given notice of any sale, assignment, [or] transfer," (Doc. 33, p. 5, ¶ 10), but paragraph 20 of the mortgage provides that the promissory note and mortgage "can be sold one or more times without prior notice to Borrower," (Doc. 33, p. 42).  Additionally, Mr. Gardiner's alleges that "[f]ederal law 1641(g)(1)(B) requires a new creditor to

provide the date of transfer," (Doc. 33, pp. 5–6, ¶¶ 11, 13), but he does not sufficiently identify an applicable statute, rule, or other legal authority to support this assertion.

In any event, whether RoundPoint had statutory or contractual authority to foreclose is immaterial to whether RoundPoint executed the power of sale "for a purpose other than to secure the debt owed" by Mr. Gardiner. *See Harris v. Deutsche Bank Nat. Tr. Co*., 141 So. 3d 482, 491 (Ala. 2013) (plaintiffs' allegations that foreclosure failed to comply with contractual and statutory prerequisites were insufficient to state a claim for wrongful foreclosure absent allegations that the power of sale was exercised for any purpose "other than to secure the debt owed by them") (alteration adopted).  Likewise, to the extent Mr. Gardiner asserts that he was not in default at the time of the foreclosure sale, this fact alone is insufficient to state a plausible claim for wrongful foreclosure absent allegations that RoundPoint foreclosed for a purpose other than to secure the mortgage. *See Wallace v. Suntrust Mortgage Inc.*, 974 F. Supp. 2d. 1358, 1363–64 (S.D. Ala. 2013) (dismissing wrongful foreclosure claim because while "[plaintiff] allege[d] that 'Suntrust initiated foreclosure against [her] in violation of the law' because she 'is not now, nor has she ever been in default of her mortgage loan," plaintiff did not allege a purpose other than to secure her debt).  Because Mr. Gardiner has not plausibly alleged facts that support his conclusion that RoundPoint foreclosed for a for a

purpose other than to secure the debt owed, the Court will dismiss his wrongful foreclosure claim.

To pursue his claims for slander of title, Mr. Gardiner must allege facts showing:

> (1) [o]wnership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire and Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003) (citations omitted).  As to the third element, malice, Mr. Gardiner must allege that the defendants intentionally or recklessly disparaged the title to his property.  *See, e.g., Dabbs v. Four Tees, Inc.*, 36 So. 3d 542, 558 (Ala. Civ. App. 2008).  "[S]lander of title requires 'that the malice and the publication of the statement cannot be separated.  The act against which a slander-of-title action is taken must have been false and malicious when it was performed.'" *Robertson v. Duncan*, 327 So. 3d 1174, 1194 (Ala. Civ. App. 2020) (quoting *Folmar*, 856 So. 2d at 809).

Mr. Gardiner contends that RoundPoint and Fannie Mae, "by conducting a foreclosure sale on the property and in recording an invalid foreclosure deed . . . caused a cloud to be placed on the title of the property of the Plaintiff" and that "[s]aid action was done intentionally and with Malice, as the [RoundPoint and Fannie Mae] knew that the foreclosure was invalid." (Doc. 33, pp. 18–19, ¶¶ 59, 62).

18

Mr. Gardiner also argues in his response brief that publication of the notices of foreclosure clouded his title. (Doc. 44, pp. 28–29). Mr. Gardiner does not reference the foreclosure sale notices as a basis for the slander of title claims in his amended complaint. That alone is fatal to his argument. *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) (explaining that "facts contained in a motion or brief 'cannot substitute for missing allegations in the complaint'"). Additionally, to the extent the Court could reasonably infer that the information in the foreclosure sale notices and foreclosure deed that Mr. Gardiner alleges was false—that is, that Mr. Gardiner was not actually in default and that RoundPoint had no authority to foreclose— Mr. Gardiner has not alleged facts to show that RoundPoint or Fannie Mae knew this information was false, so he has not alleged facts to establish malice. Mr. Gardiner does not allege that RoundPoint or Fannie Mae knew that RoundPoint lacked authority to foreclose on the property. Additionally, to the extent Mr. Gardiner alleges that RoundPoint and Fannie Mae began foreclosure proceedings "despite knowing that [he] claimed that he was not in default," (Doc. 33, p. 7, ¶ 16), there are no facts in the alleged complaint showing that Mr. Gardiner disputed his default status with RoundPoint or Fannie Mae or that they otherwise knew Mr. Gardiner was not actually in default. Accordingly, the Court will dismiss Mr. Gardiner's slander of title claims.

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (citation omitted).  To state a plausible claim of unjust enrichment under Alabama law, Mr. Gardiner must allege facts showing that "(1) the defendant[s] knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145 (Ala. 2011) (citation omitted).  Retention of a benefit is unjust if:

> (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.  In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.

*Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022) (citation omitted) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004)).

Here, Mr. Gardiner alleges that "[t]he actions of the Defendants in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the home." (Doc. 33, pp. 19–20, ¶¶ 65, 68).   Mr. Gardiner alleges that RoundPoint

and/or Fannie Mae "charged and collected more than $1085.00 of improper and unauthorized fees to Gardiner." (Doc. 33, p. 9, ¶ 21, pp. 10–11, ¶ 26). It appears that Mr. Gardiner contends these fees were improper because "[n]o explanation has been given by either [Fannie Mae] or [RoundPoint] as to what the charges are for, whether such charges were allowed, and under what authority such charges were made." (Doc. 33, p. 10, ¶ 26). Still, Mr. Gardiner does not allege that he made such payments "under a mistake of fact or in misreliance on a right or duty" or that the defendants "engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Kornegay*, 614 F. Supp. 3d at 1037. Accordingly, Mr. Gardiner has not sufficiently pleaded facts for his unjust enrichment claims to proceed.[6]

Mr. Gardiner alleges that the foreclosure sale notices published in the Alabama Messenger were defamatory and that RoundPoint either knew the statements were false or recklessly disregarded their potential falsity. "There are two types of defamation: libel, which involves the use of print media to publish the

---

[6] RoundPoint and Fannie Mae also argue that Alabama law precludes claims for unjust enrichment where there is an express agreement covering the same subject matter. Even if the defendants are correct, Mr. Gardiner may plead in the alternative. *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (explaining that Fed. R. Civ. P. 8(d)(3) allows plaintiffs to plead inconsistent theories); 66 Am. Jur. 2d Restitution and Implied Contracts § 24 ("Although the existence of a contract precludes recovery on the theory of unjust enrichment because unjust enrichment describes a recovery for the value of a benefit retained when there is no contractual relationship, a plaintiff is not precluded from pleading both theories because the fact finder may find that no contract exists and may still award damages on the theory of unjust enrichment.").

defamatory comment, and slander, which involves the oral expression of a defamatory comment." *Hambrick v. Spire Alabama, Inc.*, 367 So. 3d 1102, 1107 (Ala. Civ. App. 2022) (quoting *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999)).   Because Mr. Gardiner's claim is based on written communications—the foreclosure sale notices—his claim is one for libel, not slander.[7]  Whether proceeding under a theory of libel or slander, the elements of a cause of action are the same:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016) (citations omitted).

Here, Mr. Gardiner has not alleged sufficient facts as to the fourth element of his defamation claim; he has not alleged facts showing that RoundPoint's publication of the foreclosure sale notice is actionable "irrespective of special harm" or that he suffered special damages because of RoundPoint's publication.

As previously noted, to sustain a defamation claim, Mr. Gardiner must allege facts from which the Court could infer "either actionability of the statement irrespective of special harm or the existence of special harm caused by the

---

[7] Although paragraph 78 of the amended complaint states the communications were oral and/or written, the specific allegations relating to this claim refer only to written communications. (*See* Doc. 33, pp. 20–22, ¶¶ 71–83).

publication of the statement." *Dolgencorp*, 224 So. 3d at 186 (citations omitted). Under Alabama law, "[i]n cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable *per se*." *Nelson v. Nationstar Mortg., LLC*, 504 F. Supp. 3d 1307, 1323 (S.D. Ala. 2020) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003)). "[A] plaintiff bringing a claim for defamation *per se* . . . need not show special damages resulting from the publication; however, a claim of defamation *per quod* is not cognizable in the absence of special damages." *Nelson*, 504 F. Supp. 3d at 1322 (citing *Butler*, 871 So. 2d at 16). Special damages "are limited to material loss capable of being measured in money." *Butler*, 871 So. 2d at 18 (internal quotations omitted). So, Mr. Gardiner must either allege facts showing that RoundPoint's publication exposed him to "public ridicule or contempt" to support a claim for defamation *per se* or allege facts showing that RoundPoint's publication resulted in special damages to support a claim of defamation *per quod.*

To the extent Mr. Gardiner alleges that RoundPoint's publication injured "his reputation in the eyes of the community and the public and [he] was subject to ridicule," (Doc. 33, p. 21, ¶ 77), there are no facts in the amended complaint to support this conclusory allegation. Likewise, there are no facts to support Mr. Gardiner's allegation that he "suffered economic and special damages" because

of RoundPoint's publication.  (Doc. 33, p. 22, ¶ 83).  For example, Mr. Gardiner alleges that he suffered "damages of his reputation which negatively affected his credit and his business causing monetary loss" and that "[s]aid economic losses constitute special damages."  (Doc. 33, pp. 21–22, ¶ 80).  But Mr. Gardiner has not alleged that he owns a business, nor does he allege how the foreclosure sale notice impacted his credit.  Accordingly, Mr. Gardiner has not alleged sufficient facts to plead a claim under either a defamation *per se* theory or defamation *per quod* theory.

Mr. Gardiner's TILA claim fairs no better. The TILA provides that "[t]he creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement" updating the obligor on a number of items.  15 U.S.C. § 1638(f)(1).   "These items are the amount of the principal obligation under the mortgage; the current interest rate in effect; the date on which the interest rate may reset or adjust; the amount of any prepayment penalty that may be charged; late payment fees; a telephone number and electronic mail address that can be used to obtain information regarding the mortgage; the names and contact information of credit counseling agencies or programs reasonably available; and such other information as may be required by regulation."  *Daniels v.*

*Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1269 (11th Cir. 2022) (citing 15 U.S.C. § 1638(f)(1)).[8]

Claims for damages under the TILA are subject to a one-year limitation period. 15 U.S.C. § 1604(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *Velardo v. Fremont Inv. & Loan*, 298 Fed. Appx. 890, 892 (11th Cir. 2008) (setting out TILA's general rule on statute of limitations). Each deficient or missed statement "forms a discrete violation" subject to the one-year limitations period. *Macholtz v. Carrington Mortg. Servs., LLC*, 499 F. Supp. 3d 434, 452 (W.D. Mich. 2020) (citation omitted); *see also Serkedakis v. W. Coast Servicing, Inc.*, 2022 WL 3336490, at *7 (N.D. Ga.

---

[8] Additionally, Regulation Z requires these periodic disclosures to include information regarding:

> the amount due; the payment due date; the amount of any late payment fee and the date on which it will be imposed; the monthly payment amount (including a breakdown of how the payment will be applied to principal, interest, and escrow); the total sum of any fees charged since the last statement; any payment amount past due; the total of all payments received since the last statement (including a breakdown of how the payments were applied); the total of all payments received since the beginning of the current calendar year (including a breakdown of how the payments were applied); a list of transaction activity since the last statement; partial payment information; a toll-free telephone number and electronic mail address to obtain information about the account; the amount of the outstanding principal balance; the current interest rate in effect; the existence of any prepayment penalty; and delinquency information (including the length of the delinquency, the risk of consequences like foreclosure, and notice as to whether the service has made the first notice required for foreclosure).

*Daniels*, 34 F.4th at 1269 (citing 12 C.F.R. § 1026.41(d)(1)–(8)).

June 14, 2022) (applying one-year statute of limitations to alleged violations of 15 U.S.C. § 1638(f) and 12 C.F.R. § 1026.41(c)–(d) based on allegedly missed monthly statements); *Sevier v. Real Time Resols., Inc.*, 2024 WL 68555, at *2 (N.D. Cal. Jan. 5, 2024) (same).

Mr. Gardiner originally asserted his claims against RoundPoint as third-party claims in the underlying state court action on March 18, 2019. (Doc. 1-3, pp. 115–36). Thus, Mr. Gardiner could assert a timely TILA claim only as to periodic statements between March 2018 and December 2018. In his initial pleading, Mr. Gardiner made a passing reference to TILA and Regulation Z, (Doc. 1-1, p. 19, ¶ 8), but he did not allege facts regarding required periodic statements. Mr. Gardiner first asserted a TILA claim in his amended complaint on March 16, 2023, well outside the one-year limitations period. (Doc. 33, pp. 22–23). Because Mr. Gardiner's TILA claim rests on allegations that he did not include in his original pleading, Rule 15(c)'s relation-back provision does not save Mr. Gardiner's otherwise untimely claim. Fed. R. Civ. P. 15(c)(1)(B); *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (explaining that under Rule 15(c), an amendment to a pleading relates back to the filing date of the original pleading and saves an otherwise untimely claim when the amendment adds "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading"). Accordingly, the Court will dismiss Mr. Gardiner's TILA claim.

To prevail on an FDCPA claim, Mr. Gardiner must allege: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *Janke v. Wells Fargo and Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011).

Here, Mr. Gardiner alleges that RoundPoint is a debt collector within the meaning of the FDCPA because "when [RoundPoint] began servicing the loan, the loan was in default, and it was serviced as a defaulted loan." (Doc. 33, p. 23, ¶ 90). Mr. Gardiner alleges that RoundPoint violated the FDCPA by making false or misleading representations in violation of § 1692e, using unfair collection methods in violation of § 1692f, and failing to accurately state the amount of the debt in communications in violation of § 1692g. (Doc. 33, p. 24, ¶¶ 92–93).

The FDCPA applies only to "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6):

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

27

owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). There are six categories of persons excluded from this statutory definition, including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." § 1692a(6)(F)(iii). Courts have routinely interpreted this exclusion to mean that mortgage servicers are not covered by the FDCPA if the servicer began servicing the loan while loan was not in default. *See, e.g.*, *Alhassid v. Nationstar Mortg. LLC*, 771 Fed. Appx. 965, 968 (11th Cir. 2019) (per curiam); *Diaz v. First Marblehead Corp.*, 643 Fed. Appx. 916, 922 (11th Cir. 2016) (per curiam).

In the amended complaint, Mr. Gardiner routinely denies that he was in default, (*see, e.g.*, Doc. 33, ¶¶ 16–18), but Mr. Gardiner alleges that "RoundPoint is considered a 'Debt Collector' under the Fair Debt Collection Practices Act (FDCPA) as RoundPoint bought the loan or was assigned the servicing of loan after it was in default or treated in a default status," (Doc. 33, p. 10, ¶ 24). Still, it is not clear from the amended complaint when Mr. Gardiner's mortgage first was deemed to be in

default and when RoundPoint began servicing the loan.   For example, in the paragraphs related to his FDCPA claim, Mr. Gardiner alleges that RoundPoint began servicing the mortgage on December 1, 2021.   (Doc. 33, p. 25, ¶ 97).   This allegation does not make sense as the foreclosure sale occurred in 2018.   It is possible that this is a typo, and Mr. Gardiner meant to allege that RoundPoint began servicing the mortgage in 2012.   (Doc. 33, p. 15, ¶ 43).   Even so, exhibits to the amended complaint and motion to dismiss indicate that the earliest Mr. Gardiner received notification of default was October 2017.   None of Mr. Gardiner's factual allegations contain facts from which the Court may infer that that his mortgage was in default when RoundPoint began servicing the mortgage.   *Cf. Alhassid*, 771 Fed. Appx. at 968–69 (plaintiff did not sufficiently plead that mortgage servicer was a debt collector where complaint did not allege that the debt was in default at the time it was obtained by the servicer).   Because Mr. Gardiner does not allege facts showing that his mortgage was in default before RoundPoint began servicing the mortgage, Mr. Gardiner has not plausibly alleged that RoundPoint is a debt collector for his FDCPA claim.   Therefore, the Court will dismiss that claim.

Mr. Gardiner alleges that "RoundPoint, as the mortgagee in the mortgage foreclosing proceeding, owed Gardiner a duty of good faith and fairness in the mortgage foreclosure proceeding" and that RoundPoint breached this duty by selling the property for $20,600.00, which, according to Mr. Gardiner, "was well below the

market value and well below the amount of the debt." (Doc. 33, pp. 30–31, ¶¶ 124, 126). Because a mortgage lender, under Alabama law, does not owe a borrower "a general fiduciary duty." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110 (11th Cir. 2014), the Court will dismiss this claim.

In count 13, Mr. Gardiner asserts a claim for declaratory judgment against RoundPoint. As the basis for this claim, Mr. Gardiner alleges as follows:

> 129. Defendants breached the contract with Gardiner by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application. Defendants never sent the Plaintiff the required notices and failed to properly apply their payments.

> 130. As a result, Gardiner is entitled to the following declaratory relief: (1) An Order declaring that he is not in default of his mortgage agreement and declaring the notice of default is null and void. (2) An order declaring that Defendants had no right or authority to foreclose on Gardiner's property. (3) An Order prohibiting Defendant from foreclosing on Gardiner's property. (4) An order finding and declaring that RoundPoint breached its fiduciary duty when it conducted an unreasonable commercial sale due the inadequate sales price. (5) An order declaring the foreclosure sale null and void and an order setting aside the foreclosure sale and deed. (6) An order declaring that Gardiner is the rightful owner of the property.

(Doc. 33, pp. 31–31, ¶¶ 129–30).

Here, Mr. Gardiner's request for declaratory relief rests partially on the portion of breach of contract claims that the defendants have not challenged in their motion to dismiss. Accordingly, the Court declines to dismiss Mr. Gardiner's request for declaratory relief at this stage.

## IV.

For the reasons stated in this opinion, the Court dismisses Mr. Gardiner's claims against RoundPoint and Fannie Mae other than Mr. Gardiner's breach of contract claims to the extent those claims are premised on the alleged mishandling of payments and charging of fees in violation of paragraph 2 of the mortgage.  The Clerk shall please **TERM** Doc. 38.  No later than **14 days** from the entry of this order, the parties shall meet and confer pursuant to Rule 26(f), file a joint report of their planning meeting, and email to chambers a proposed scheduling order in compliance with the Court's initial order.  (Doc. 4, pp. 4–6).

**DONE** and **ORDERED** this July 23, 2024.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE